T. SHERPA

person?

**A. We did bring him inside the precinct, yes.**

Q. Did he have any visible injuries to him?

**A. Yes, he did have visible injuries on his face area.**

Q. Did he have injuries that to you, as an officer in your experience, would corroborate his statements to you that he was assaulted by Defendant, Frank Spaulding-Bey?

**A. Yes.**

**MR. ACCARINO: Objection. But you can answer.**

**A. Yes. There were visible injuries on his face for which he did say that Defendant, Frank Spaulding, did hit him.**

Q. Did you have any reason at that point to not believe what Oliver was telling you?

**A. No. We did believe Oliver Louis's accounts. For that reason, we went**

T. SHERPA

for a search of the area to apprehend Defendant, Frank Spaulding.

Q. Was that in part because he had injuries to his face which included bleeding?

A. Yes, his statement, along with the injuries visible, we did deem his statement to be correct.

Q. Now, before you brought Oliver to the precinct, did you conduct any other investigation? Meaning, did you speak to any other witnesses before bringing him to the precinct?

A. No, we just spoke to Oliver Louis. And due to the nature of the job, fast moving, we thought it would be best to do a search initially with CV/complainant victim.

Q. At what point, if any at point, did you feel that Oliver Louis may need medical attention?

A. We initially did think Oliver Louis did need physical -- medical attention. We did bring him to the

T. SHERPA

Spaulding-Bey, correct?

**A. Yes.**

Q. So you as an officer were relying upon the information gained from those officers to determine whether Oliver Louis was still just a victim, or also a victim and a possible Defendant, right?

**A. From our point, Oliver Louis was the victim at that moment.**

Q. When did that change?

**A. Upon sergeant's arrival and later on -- yes, upon sergeant coming to our location, sergeant advised he's going to be placed under arrest, too, for assaulting Frank Spaulding.**

Q. What information did you have at that point, other than the sergeant stating that it was his decision to make an arrest, what information did you have supporting that arrest?

**A. We did, based on the orders received, we did arrest Oliver Louis at that moment, and also that they were involved in a physical altercation.**

T. SHERPA

**A. Can you rephrase it one more time, please.**

Q. Other than what you just testified to which is that, I believe, there was probable cause because he was involved in a fight with another person, is there anything else that you can tell us today that supported your belief that there was probable cause?

**A. Just to make it easier, like sergeant did have a previous words with the other officers pertaining to what the accounts of Frank Spaulding were, and did approach us at our side based on his -- what you call -- his interaction with Frank Spaulding on the other side. He did come to our location and said that Defendant, Oliver Louis, is also going to be under arrest.**

Q. Did your sergeant tell you what Frank Spaulding-Bey said to him to support the fact that you were now arresting Oliver Louis?

**A. That they were both involved in**

**T. SHERPA**

**a fight, and it was started by Oliver Louis.**

Q. Are you aware that Frank Spaulding-Bey told another officer within the 77th Precinct on body-worn camera footage that Frank Spaulding-Bey admitted that he threw the first punch?

**A. Not that I recall.**

Q. Had you known that fact, would you still have arrested Oliver Louis?

**MR. ACCARINO: Objection.**

**You can answer.**

**A. They both were involved in a fight at that location. We wouldn't be able to make a judgment based on who threw the first punch.**

Q. But assuming that Frank Spaulding-Bey admitted to your other officers on body-worn camera footage that he started the fight, that he swung the first punch, would you still have arrested Oliver Louis? In other words, if you knew that that person admitted he started the fight, would you still arrest Oliver Louis?

of voiding the arrest you made of Shantel Wilson?

MR. ACCARINO: Objection.

You can answer.

**A. Like we did reach out to the first 9-1-1 caller on regards to this incident call. And upon approaching her and interviewing her, the person did mention that the involvement was between two males, Frank Spaulding and Oliver Louis, where Shantel Wilson was also a party but wasn't involved physically.**

Q. What stopped you, if anything, from speaking with that first 9-1-1 caller before you made the decision to arrest Shantel Wilson?

**A. It happened in a very fast-moving environment. We were moving around places. Based on that, we initially did hold Miss Shantel on that account.**

Q. How many minutes or hours went by from the moment you placed cuffs on Shantel Wilson's wrists and you then spoke with the first 9-1-1 caller? How much time

T. SHERPA

that you are referring to here?

**A. That CV was -- that Defendant Spaulding was present in that address, and they did had some kind of verbal altercation. As per my understanding of Frank Spaulding does represent the landlord of that location. And he was -- I believe he was visiting that location for some residence-related work.**

Q. What are you basing that testimony on?

**A. Come again?**

Q. What are you basing what you just said on?

**A. He was there for like -- he was basically representing the landlord to get into that apartment. That is what my understanding was.**

Q. Where are you getting that from?

**A. That is what you asked me what is he there for.**

Q. Yes. But where are you getting that fact from? Is that coming from your

**based on what the witness stated. And so we just had to do paperwork in order for us to document that she was, in fact, arrested just for a moment before releasing.**

Q. Now, in the detail section, did you write the section that starts with "at TPO"?

**A. Yes, I did.**

Q. What is a 1034?

**A. It's assault in progress.**

Q. It says: "Upon further investigation, witness and CV states Defendant was not involved in the altercation."

Just real quick, CV refers to Frank Spaulding-Bey here, right?

**A. Yes.**

Q. Witness, would be that 9-1-1 caller we talked about, right? It says here she is not involved. No prima facie exists. P-R-I-M-A F-A-C-I-E exists. What does that mean?

**A. There is nothing to hold her in account for. That is that.**