UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

OLIVER LOUIS; SHANTEL WILSON,

$\qquad$ *Plaintiffs*,

– against –

THE CITY OF NEW YORK; SHERPA
TSHERING, *Police Officer, Shield #
12950*; FRANK E SPAULDING-BEY;
MACCABEE 1 REALTY,

$\qquad$ *Defendants*.

---

**MEMORANDUM & ORDER**
22-cv-07690 (NCM) (CLP)

**NATASHA C. MERLE**, United States District Judge:

Before the Court is defendants The City of New York ("City") and Tshering[1]

Sherpa's (together, "City Defendants") motion for summary judgment, ECF No. 57 ("City

Motion"), and defendant Frank E. Spaulding-Bey's motion for summary judgment,

ECF No. 36 ("Spaulding-Bey Motion"[2]).[3] Plaintiffs Oliver Louis and Shantel Wilson bring

---

[1]      Although the complaint names Sherpa Tshering, the parties' papers indicate that the officer's correct name is Tshering Sherpa. The Court refers to Officer Sherpa by this name.

[2]      The Court notes that defendant Spaulding-Bey, proceeding *pro se*, initially filed the Spaulding-Bey Motion as a motion to dismiss. *See* ECF No. 36. However, because at that time discovery had already been completed and defendant Spaulding-Bey presented documentary evidence attached to his motion papers, the Court found that it must construe the motion pursuant to Federal Rule of Civil Procedure 56. R. 56 Notice Order 2, ECF No. 46. Accordingly, the Court provided such notice, noted the import of summary judgment, and granted leave for supplemental briefing. R. 56 Notice Order 2–3 (citing *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009)). The Court therefore considers the briefing and exhibits submitted at ECF Nos. 36, 39, 43, 48, 49, 50, 53, and 55 as part of the record for the Spaulding-Bey Motion.

[3]      The Court hereinafter refers to plaintiff's response to the City Motion as "Pls.' City Opposition," ECF No. 58; plaintiff's response to the Spaulding-Bey Motion as "Pls.' Spaulding-Bey Opposition," ECF No. 39; plaintiff's supplemental response to the

this action primarily seeking relief pursuant to 42 U.S.C. § 1983 ("Section 1983") and New York state common law for false arrest. For the reasons stated herein, the City Motion is **DENIED in part**, **GRANTED in part** and the Spaulding-Bey Motion is **DENIED in part**, **GRANTED in part**.

## BACKGROUND

On May 1, 2022, plaintiffs Louis and Wilson were involved in a physical altercation with defendant Spaulding-Bey,[4] the building manager of the apartment building where plaintiffs resided together at the time. Pls.' Resp. to City Defs.' Statement of Material Facts ("56.1 Statement") ¶ 1, ECF No. 58-1. The sequence of that altercation—and the parties' reports to the police—form the core of this dispute. Accordingly, the Court recounts the record in detail below through facts derived from the parties' evidentiary submissions and statements of material facts. Unless otherwise stated, the following facts are undisputed.

At 10:06AM, Wilson called 911 and reported that the "[b]uilding manager hit" Louis, who was at that time "bleeding," and "push[ed] [Wilson] down the stair[s]." City Defs.' Resp. to Pls.' Counter Statement of Material Facts ¶ 11, ECF No. 59-1 ("Counter 56.1 Statement"). Wilson later testified that during the altercation: "[Spaulding-Bey] was at the top of the stairs and [Louis] was walking up the staircase"; Spaulding-Bey "kept saying call the police" prior to punching Louis; and Spaulding-Bey "struck [Louis] in the face" while at "an arm's distance," after which Louis "turned to [Wilson] and said he just sucker

---

Spaulding-Bey Motion as "Pls.' Suppl. Spaulding-Bey Opposition," ECF No. 53; City Defendants' reply in support of the City Motion as the "City Reply," ECF No. 59; and defendant Spaulding-Bey's reply in support of the Spaulding-Bey Motion as the "Spaulding-Bey Reply," ECF No. 55.

[4]     Although the complaint names defendant Spaulding-Bey without a hyphen in his name, he has indicated to the Court that it is correctly spelled as Spaulding-Bey. The Court refers to defendant Spaulding-Bey accordingly.

punched me." Wilson Dep. Tr. 22:2–14, ECF No. 58-17. Wilson further testified that while standing outside her apartment door, she observed Spaulding-Bey "continue[] to attack" Louis, strike him for a second time in the same location, "bear hug" Louis by placing "both of his arms around both of [Louis'] arms" while Louis' "arms were down, pinned to his side," and "throw him down on the floor and against the wall and against the front door of the building." Wilson Dep. Tr. 22:17–18, 23:1–21. Wilson recounted that she "was telling [Spaulding-Bey] to get off of" Louis and three "[n]eighbors came from upstairs on the third floor because they heard [Wilson] screaming." Wilson Dep. Tr. 25:2–10. Wilson testified that, after Spaulding-Bey and Louis "were separated," she was "struck in the face" with a "closed fist" by Spaulding-Bey "after he pushed [her] down." Wilson Dep. Tr. 35:2–23.

At 10:17AM, defendant Spaulding-Bey arrived at the 77th Police Precinct, in Brooklyn, New York. 56.1 Statement ¶ 1. Police Officer Huaman interviewed Spaulding-Bey, who reported that Louis "got within my space" and:

> kept forwarding to me, so I struck [Louis] to defend myself. We engage, go on the floor. His girlfriend now comes. They're both attacking me. People from the third floor come upstairs to break it up, he headbutts me. Him, yea. Then the girlfriend grabs my bag to take it into the apartment. I say no, get my bag, she can't have my bag. So then she gets it, she reaches back to hit me, I hit her to get my bag. Then he comes and I hit him again.

Body Worn Camera Footage of Police Officer ("BWC") Huaman 10:18:40–10:19:15, ECF No. 58-3 (DEF0237); *see also* 56.1 Statement ¶ 2.

As to Louis specifically, Spaulding-Bey reported that Louis aggressively approached him as he entered the building by "run[ing] upstairs" stating "yo, yo, what's up, what's up" and "com[ing] towards" Spaulding-Bey. BWC Huaman 10:18:12–10:18:27;

*see also* 56.1 Statement ¶ 2. Spaulding-Bey further told Officer Huaman that Louis "kept forwarding" to Spaulding-Bey, after which he "struck [Louis] to defend [himself]," BWC Huaman 10:18:40–10:18:48, and then Spaulding-Bey "hit [Louis] again" a second time, BWC Huaman 10:19:13–10:19:15. When asked at his deposition whether he told the officers that he "took the first strike on" Louis, Spaulding-Bey testified that he did so "[a]s he was coming towards me," Pls.' Excerpted Spaulding-Bey Dep. Tr. 35:25–36:5, ECF No. 58-12, and that he "told the police officer [Louis] got into my personal space and I struck [Louis]," Pls.' Excerpted Spaulding-Bey Dep. Tr. 40:5–14. Spaulding-Bey further testified that he did so because "in my mind I said if [Louis is] coming up he wants to have a fight and when he came up to me that's when I punched him." Pls.' Excerpted Spaulding-Bey Dep. Tr. 36:12–23.

As to Wilson, Spaulding-Bey told Officer Huaman the following: "First, while me and [Louis] were on the floor, [Wilson] attacked me, so they're double teaming me . . . punched me, kicked me, because we are on the floor. So she is kicking and punching me." BWC Huaman 10:19:37–10:19:49. He also told Officer Huaman that Wilson "reache[d] back to hit me, [so] I hit [Wilson] to get my bag," BWC Huaman 10:19:08–10:19:13, and later said that Wilson was "fighting me for the bag, I strike her back, I get the bag," BWC Huaman 10:20:04–10:20:08. Spaulding-Bey later testified that he "had no idea" Wilson would be arrested "because as far as I'm concerned I didn't have a fight with her. I simply punched her because she got involved in the fight." Pls.' Excerpted Spaulding-Bey Dep. Tr. 40:19–41:2.

At 10:20AM, Louis was interviewed at the 77th Precinct by Officer Sherpa, Sergeant Jose Genao, Sergeant Derek Jaffe, and an unnamed officer. Sherpa 10:19:40–10:21:21, ECF No. 58-7 (DEF0238); BWC Genao 10:20:28–10:21:21, ECF No. 58-4

(DEF0242), BWC Jaffe 10:20:29–10:21:21, ECF No. 58-14 (DEF0241); *see also* 56.1 Statement ¶ 5. Louis told the officers: "While I was coming up the stairs [Spaulding-Bey] hit me in the face." BWC Sherpa 10:20:40–10:20:48. When asked whether he had struck defendant Spaulding-Bey, Louis replied, "I'm defending myself, so of course." BWC Jaffe 10:20:58–10:21:02. Louis later testified, describing the altercation: "My arms were pinned together to my body. He's on top of me so my arms were pinned on my own body, so it's hard for me to really do anything." Pls.' Excerpted Louis Dep. Tr. 27:19–25, ECF No. 58-16. After Louis' report, Sergeant Jaffe told Louis that "you're saying [Spaulding-Bey] hit you first, he said you hit him first, so unfortunately both of you are going to have to get arrested" and directed Officer Sherpa to arrest Louis. BWC Jaffe 10:21:20–10:21:37; Defs.' Excerpted Sherpa Dep. Tr. 29:4–25, 37:17–23, ECF No. 57-11. Officer Sherpa then arrested Louis for misdemeanor assault. NYPD Arrest Report K22617954-H, ECF No. 57-5 (DEF0243–45) ("Louis Arrest Report").

Officer Sherpa later testified that "we did believe Oliver Louis's accounts" and "we did deem his statement to be correct" in part based the visible injuries to Louis' face. Pls.' Excerpted Sherpa Dep. Tr. 23:17–24:9, ECF No. 58-13. He further testified that, "[f]rom our point, Oliver Louis was the victim" until Sergeant Jaffe arrived and directed him to arrest Louis. Defs.' Excerpted Sherpa Dep. Tr. 29:4–16.

At 10:33AM, Officer Huaman told Officer Sherpa: "so the guy [Spaulding-Bey] claimed that as he was fighting him [Louis], [the] girlfriend came and started punching him [Spaulding-Bey] and kicking him also throughout his body . . . yea so, she might be under too." 56.1 Statement ¶ 11; BWC Sherpa 10:33:37–10:33:50. Thereafter, at 10:40AM, Officer Sherpa took Wilson into custody—by the City Defendants' account, she was detained; by plaintiffs' account, she was arrested. 56.1 Statement ¶ 12 ("detained");

Counter 56.1 Statement ¶ 39 ("arrest"). Wilson was placed in handcuffs, brought into the precinct for processing, pat down, directed to remove her shoes and socks, placed in a cell, and charged with attempted assault in the third degree with the intent to cause physical injury. 56.1 Statement ¶ 12; Counter 56.1 Statement ¶ 39; NYPD Arrest Report K22617919, ECF No. 58-8 (DEF0246); BWC Sherpa 10:39:40–10:40:59; BWC Loverasbaez 10:39:40–11:00:21, ECF No. 58-5 (DEF0234); BWC Defreitas 10:58:35– 11:02:03, ECF No. 58-6 (DEF0232).

At 10:41AM, Officer Sherpa interviewed plaintiffs' neighbor, Shestas Duncan. Counter 56.1 Statement ¶ 42; BWC Sherpa 10:41:48–10:47:48. Duncan recounted that Louis and Spaulding-Bey had been "fighting" but that Wilson "was not involved at that point." BWC Sherpa 10:42:06–10:42:20. Duncan described "head punches between the guys; there was a whole lot of headlocking, pushing around," BWC Sherpa 10:42:55– 10:43:01, but that she "did not see [Wilson] lay a finger on [Spaulding-Bey]," BWC Sherpa 10:44:43–10:44:46. Thereafter, at 10:45AM, Officer Daniel Brown stated: "I don't think we are going to charge her," and "[s]he's going to be let go." BWC Sherpa 10:45:25– 10:45:58. Wilson was released from custody at 11:30AM and her arrest voided. Sherpa Activity Log Report, ECF No. 57-9 (DEF0010); *see also* 56.1 Statement ¶ 14.

Later that afternoon, Louis was issued a desk appearance ticket, which summoned his appearance in local criminal court on May 21, 2022 for the charged offense of PL 120.00, assault with intent to cause physical injury, a Class A misdemeanor. 56.1 Statement ¶ 9; Louis Arrest Report 1; Louis Desk Appearance Ticket, ECF No. 58-10 (DEF0004). One day before his appearance date, the Kings County District Attorney issued a Declined Prosecution letter, stating the "[r]eason for declined prosecution" was that the "case cannot be prosecuted in a timely manner." 56.1 Statement ¶ 15; May 20,

2022 Declined Prosecution Form, ECF No. 57-10 (DEF0025). Louis was not arraigned on the criminal charge. 56.1 Statement ¶ 16; *see also* Defs.' Excerpted Louis Dep. Tr. 48:24–50:16, ECF No. 57-12. Defendant Spaulding-Bey was arrested and charged with four offenses: Assault in the Third Degree, PL 120.00; Attempted Assault in the Third Degree, PL 110/120.00; Menacing in the Third Degree, PL 120.15; and Harassment in the Second Degree, PL 240.46. 56.1 Statement ¶ 10; Decl. of Assistant District Att'y Alexis Lightner, *People v. Spaulding-Bey*, Supreme Court of the State of New York, County of Kings, ECF No. 58-18; *see also* Defs.' Excerpted Spaulding-Bey Dep. Tr. 46:4–13, ECF No. 57-6. Spaulding-Bey was prosecuted by the Kings County District Attorney's Office for his involvement in the altercation. Counter 56.1 Statement ¶ 50.

In December 2022, plaintiffs brought this action seeking monetary relief for fourteen separate causes of action against defendants the City, Officer Sherpa, Spaulding-Bey, and Maccabee 1 Realty.[5] In September 2023, the Clerk of Court entered the default of defendant Maccabee 1 Realty pursuant to Federal Rule of Civil Procedure 55(a) for failure to appear or defend in this action. ECF No. 22. After the completion of discovery, defendants initiated dispositive motion practice in April 2024. *See* ECF Order dated Mar. 18, 2024. At that time, plaintiffs represented that they would "discontinue" their claims for failure to intervene, supervisory liability, negligent hiring, negligence, and intentional infliction of emotional distress. Pls.' Pre-Mot. Conf. Resp. Ltr. 3, ECF No. 37. Plaintiffs have since abandoned their malicious prosecution claims and note that "the only claims remaining for determination on [the City Motion] are those for false arrest under federal

---

[5]    According to plaintiffs, Maccabee 1 Realty was plaintiffs' rental property manager and defendant Spaulding-Bey's employer at the time of the altercation. Compl. ¶ 1, ECF No. 1.

and state law, including the vicarious liability of the City for the false arrest and its individual municipal liability for its unlawful policy of arresting all participants in an altercation despite clear evidence of justification." Pls.' City Opp'n 16 n.1. Plaintiffs also maintain claims against defendant Spaulding-Bey for false arrest and common law assault and battery.

## LEGAL STANDARD

A party moving for summary judgment must show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where a party proceeds *pro se*, "we construe his submissions liberally, as raising the strongest arguments they suggest." *Whitfield v. City of New York*, 96 F.4th 504, 518 (2d Cir. 2024); *see also Lin v. Yuri Sushi Inc.*, No. 18-cv-00528, 2024 WL 1193554, at *3 (S.D.N.Y. Mar. 20, 2024) (noting that this standard applies to a "*pro se* movant . . . as with any *pro se* submissions").

On review of a Rule 56 motion, the Court "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." *Brandon v. Royce*, 102 F.4th 47, 54 (2d Cir. 2024) (citing *Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441, 445 (2d Cir. 2023)).[6] Nonetheless, the Court may not weigh the evidence, assess credibility, or determine the truth of the matter—it must only answer the "threshold inquiry" of "whether there is the need for a trial." *Green v. Town of East Haven*, 952 F.3d 394, 405–06 (2d Cir. 2020). *See also Rupp v. Buffalo*, 91 F.4th 623, 634 (2d Cir. 2024) ("Credibility determinations, the weighing of the

---

[6]     Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

The initial burden rests with the movant to demonstrate an absence of material and genuine factual disputes. *Singletary v. Russo*, 377 F. Supp. 3d 175, 183–84 (E.D.N.Y. 2019). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). If that burden is satisfied, the non-moving party must then point to evidence demonstrating that a material fact is indeed in dispute. *Laurent v. Edwin*, 528 F. Supp. 3d 69, 83 (E.D.N.Y. 2021) (citing *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). A mere "scintilla of evidence" is "insufficient." *Dawson v. Cnty. of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004). Facts are in genuine and material dispute when "the jury could reasonably find for" the non-moving party based on the evidence in the record. *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021). The Court need only consider admissible evidence, and it need not leave every evidentiary stone turned. *See Looney v. Macy's Inc.*, 588 F. Supp. 3d 328, 340 (E.D.N.Y. 2021).

## DISCUSSION

The City Defendants contend that they are entitled to judgment as a matter of law on all claims because no material factual dispute exists in the record. Plaintiffs counter that a material factual dispute remains for the jury regarding the arresting officers' knowledge and basis for probable cause as to the arrests of plaintiffs. The City Defendants maintain that there is no such factual dispute but further argue that, regardless, (i)

plaintiff has developed no evidence supporting municipal liability and (ii) Officer Sherpa is entitled to qualified immunity.

For the reasons stated below, plaintiffs have raised a material factual dispute that bears on whether probable cause existed for their arrests. However, they have failed as a matter of law to establish that the City is liable for false arrest pursuant to Section 1983, or that defendant Spaulding-Bey can be held liable for federal or state false arrest in this action. Accordingly, the motions must be granted as to the federal false arrest claims against defendants the City and Spaulding-Bey, and the state false arrest claim against defendant Spaulding-Bey. The same cannot be said for defendant Sherpa, as the material factual dispute as to probable cause for the arrests must be resolved before the Court can determine whether he is shielded from liability in this action pursuant to the state and federal doctrines of qualified immunity. Accordingly, the City Motion is denied insofar as it seeks summary judgment on the false arrest claims against defendant Sherpa.

As to the common law assault and battery claims against defendant Spaulding-Bey, a material factual dispute similar to the one underlying the false arrest claims is evident on the record before the Court. Whether or not defendant Spaulding-Bey acted in self-defense is a question material to his liability for assault and battery. Accordingly, the Spaulding-Bey motion is denied insofar as it seeks summary judgment as to plaintiffs' common law claims of assault and battery.

I.    <u>False Arrest</u>

The City Defendants contend that Officer Sherpa had probable cause to arrest plaintiffs for several offenses, including assault, harassment, menacing in the third degree, and disorderly conduct. City Mot. 17–20. Plaintiffs counter that their reports of self-defense to officers rendered any arrest made without probable cause. Specifically,

plaintiffs argue that when arresting the plaintiffs, the "police knew [plaintiffs] engaged in justified self-defense," Pls.' City Opp'n 5, and "turned a blind eye to the exculpatory evidence of self defense confirmed by Spaulding-Bey's own account." Pls.' City Opp'n 9. Plaintiffs further contend that "[i]t was objectively unreasonable" for the officers to not interview eyewitness Duncan "prior to arresting Wilson." Pls.' City Opp'n 11. Viewing the record in the light most favorable to plaintiffs, the Court concludes that a reasonable jury could find that Officer Sherpa had knowledge of and disregarded plaintiffs' self-defense accounts. Accordingly, a material factual dispute remains over the officers' knowledge—and therefore the basis for probable cause—at the time of plaintiffs' arrests.

### a. *Probable Cause*

Plaintiffs' false arrest claims arise out of their Fourth Amendment right against unreasonable search and seizure. *See Kayo v. Mertz*, 531 F. Supp. 3d 774, 788 (S.D.N.Y. 2021). That right protects against arrests made without probable cause and provides a basis for relief under federal and state law. *Id.* ("A § 1983 claim for false arrest . . . is substantially the same as a claim for false arrest under New York law."). False arrest under New York state law requires: "(1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *TADCO Const. Corp. v. Dormitory Auth. of State of New York*, 700 F. Supp. 2d 253, 268 (E.D.N.Y. 2010).

Probable cause is a complete defense to a false arrest claim under New York state and federal law. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). The standard for probable cause requires: "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jocks v.*

*Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003). The courts have explained that this is a "fluid concept not readily, or even usefully, reduced to a neat set of legal rules." *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). It deals in "probabilities" rather than "hard certainties." *Id.* at 157. Ultimately, this standard requires "only such facts as make wrongdoing or the discovery of evidence thereof probable." *Id.*

This necessarily demands a fact-specific inquiry. *Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012) (explaining that probable cause is dependent on "particular factual contexts"). When considering whether an arrest was supported by probable cause, the question for the Court is "whether the facts known at the time of the arrest objectively provided probable cause to arrest," regardless of the charged or stated offense. *Brown v. City of New York*, 798 F.3d 94, 99 (2d Cir. 2015). That question must be answered based on the "totality of the circumstances." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013). In some circumstances, the "veracity" and source of a complaining witness's account may be "two important factors" in the court's inquiry. *Triolo v. Nassau Cnty.*, 24 F.4th 98, 106 (2d Cir. 2022).

Probable cause may be determined as a matter of law only if "there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant*, 101 F.3d at 852; *see also Maliha v. Faluotico*, No. 1:04-cv-01127, 2007 WL 676677, at *3 (N.D.N.Y. Feb. 28, 2007), *aff'd*, 286 F. App'x 742 (2d Cir. 2008). Where multiple officers are involved in an arrest, the Court must assess "the collective knowledge of the police, rather than [] that of the arresting officer alone." *Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124, 127 (2d Cir. 2009) ("Where law enforcement authorities are cooperating in an investigation[,] the knowledge of one is presumed shared by all."). Only information that

is communicated between officers will be considered collective knowledge. *Jackson v. Tellado*, 236 F. Supp. 3d 636, 654 (E.D.N.Y. 2017); *see also Brown*, 798 F.3d at 99. Nonetheless, an arresting officer may only rely on reasonable information from another officer that is devoid of "significant indications to the contrary." *Williams v. City of New York*, 409 F. Supp. 3d 137, 142 (E.D.N.Y. 2019); *see also Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006).

Here, the City Defendants contend that defendant Spaulding-Bey's "visible injuries" and report to the officers provided probable cause to arrest plaintiffs for assault in the third degree, harassment in the second degree, and disorderly conduct, as well as menacing in the third degree as to Louis. City Mot. 17–20. Each of these offenses involve physical injury or threatening behavior. City Mot. 17–20 (citing New York Penal Law §§ 120.00(1), 240.26, 240.20, and 120.15). Plaintiffs do not contest probable cause based on the elements of these offenses. *See generally* Pls.' City Opp'n. Instead, they argue that their reports to the officers that they acted in self-defense vitiated any probable cause that may have otherwise existed for their arrests. Pls.' City Opp'n 14–15.

### b. *Exculpatory Information*

The question before the Court thus becomes whether, given the record evidence viewed in the light most favorable to plaintiffs, a reasonable jury could find that the arresting officers disregarded exculpatory information supporting plaintiffs' reports of self-defense. It could. Because the officers' collective knowledge at the time of plaintiffs' arrest is disputed, and because that knowledge is material to whether the officers had probable cause to arrest, the Court cannot at this juncture rule as a matter of law that plaintiffs' arrests were based on probable cause.

Pursuant to New York law, self-defense is an exculpatory defense which may "negate probable cause." *Jocks*, 316 F.3d at 135. Arresting officers do not have a duty "to investigate exculpatory defenses" or "to assess the credibility of unverified claims of justification before making an arrest." *Jocks*, 316 F.3d at 135–36. But they may not "deliberately disregard" facts before them which may establish an exculpatory defense. *Id.* at 136. Thus, while an "officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause . . . an officer may not disregard plainly exculpatory evidence." *Washington v. Napolitano*, 29 F.4th 93, 107 (2d Cir.), *cert. denied*, 143 S. Ct. 485 (2022). Accordingly, the "crucial question" as to whether an apparent defense has vitiated probable cause "is whether the arresting officers" disregarded information that clearly exculpated plaintiffs. *Deanda v. Hicks*, 137 F. Supp. 3d 543, 572 (S.D.N.Y. 2015).

For example, in *Jocks*, the court found that "a reasonable jury could have concluded that [the officer] should have known that [plaintiff] was acting in self-defense." *Jocks*, 316 F.3d at 136. The court affirmed the district court's denial of summary judgment for the officer because the record, viewed in the light most favorable to the plaintiff, established that the arresting officer "knew" plaintiff had been acting in self-defense— when he threw a telephone at the officer after the officer drew a gun—and "a jury could therefore find that the arrest lacked probable cause." *Id.* Further, in *Triolo*, the court concluded that an arrest lacked probable cause where the police officer "showed no interest" in exculpatory information presented to him, "rolled his eyes" as that information was relayed, and failed to "ask any follow-up questions." *Triolo*, 24 F.4th at 106–07. *See also Walsh v. City of New York*, 742 F. App'x 557, 561 (2d Cir. 2018) (finding "the trial evidence was sufficient for a jury to conclude that, given the totality of the

circumstances facing [the officers], 'a person of reasonable caution' in their position would have understood that [plaintiff's] use of force . . . was privileged, and that [plaintiff] therefore committed no crime").

Here, the City Defendants rely on information relayed from two other officers to the arresting officer, defendant Sherpa, to argue that Officer Sherpa had probable cause to arrest plaintiffs.

*First*, as to Louis, they note that Sergeant Jaffe "directed" Officer Sherpa "to handcuff and arrest" him, and that this "created probable cause" for Louis' arrest. City Mot. 16. In Officer Sherpa's presence, Sergeant Jaffe stated to Louis, "you're saying he [Spaulding-Bey] hit you [Louis] first, he said you hit him first, so unfortunately both of you are going to have to get arrested." City Mot. 16; *see also* BWC Sherpa 10:21:24–10:22:05; Defs.' Excerpted Sherpa Dep. Tr. 29:4–25; BWC Jaffe 10:21:28–10:21:37. The City Defendants note that Louis "corroborated" this information by stating to Officer Sherpa and Sergeant Jaffe that he struck Spaulding-Bey. City Mot. 16–17. However, the full record citation for this "corroboration" is Louis' report that he had struck Spaulding-Bey while "defending" himself. BWC Sherpa 10:20:31–10:21:04; *see also* 56.1 Statement ¶ 5. Indeed, Louis expressly told Sergeant Genao and Officer Sherpa: "While I was coming up the stairs [Spaulding-Bey] hit me in the face." BWC Sherpa 10:20:40–10:20:48. This is consistent with Wilson's earlier 911 call, in which she reported that the "[b]uilding manager hit" Louis. Counter 56.1 Statement ¶ 11. This is also consistent with Officer Sherpa's later testimony that "[f]rom our point, Oliver Louis was the victim." Defs.' Excerpted Sherpa Dep. Tr. 29:4–10. Officer Sherpa's understanding that Louis "was the victim" did not change until Sergeant Jaffe arrived and directed him to arrest Louis. *See* Defs.' Excerpted Sherpa Dep. Tr. 29:11–16.

The record does not establish whether information concerning plaintiffs' reports of self-defense was communicated to Sergeant Jaffe before he issued the directive to arrest Louis. Nor does the record establish whether Sergeant Jaffe knew that Spaulding-Bey seemed to contradict himself when reporting the altercation to the officers by both admitting to striking Louis first but also claiming that he acted in self-defense. *See* BWC Huaman 10:18:13–10:19:22 (Spaulding-Bey telling Officer Huaman that Louis "kept forwarding" to him, after which he "struck [Louis] to defend himself," and then he "hit [Louis] again" a second time). The Court therefore cannot determine on this record whether the arresting officers relied on information contradicted by "significant indications to the contrary" when deciding to arrest Louis. *Williams*, 409 F. Supp. 3d at 142.

*Second*, as to Wilson, the City Defendants note that "[p]rior to detaining" Wilson, Officer Huaman "informed" Officer Sherpa "that plaintiff Wilson struck" Spaulding-Bey. City Mot. 17. They contend that this statement relaying Spaulding-Bey's "claim[] that as he was fighting [Louis], [Wilson] came and started punching [Spaulding-Bey] and kicking him also throughout his body," BWC Sherpa 10:33:37–10:33:50, had the effect of "creating probable cause" for Wilson's arrest, City. Mot. 17. However, Spaulding-Bey also told Officer Huaman that he "hit [Wilson] to get [his] bag, BWC Huaman 10:19:09–10:19:13, and Wilson had also earlier reported that Spaulding-Bey "push[ed] her down the stair[s]," Counter 56.1 Statement ¶ 11. Indeed, Spaulding-Bey later testified that he "had no idea" that Wilson would be arrested because he "didn't have a fight with her." *See* Pls.' Excerpted Spaulding-Bey Dep. Tr. 40:19–41:2. Furthermore, after Wilson's arrest, plaintiffs' neighbor Duncan reported to Officer Sherpa that she "did not see [Wilson] lay a finger on [Spaulding-Bey]." BWC Sherpa 10:44:43–10:44:46.

As with the circumstances surrounding Louis' arrest, the record does not establish whether information concerning Wilson's self-defense was communicated to Officer Sherpa before he arrested Wilson. Nor does the record indicate whether Officer Sherpa believed either Wilson or Spaulding-Bey to have been acting in self-defense during the altercation. Furthermore, plaintiffs have raised a material factual dispute as to why the officers did not interview eyewitness Duncan prior to arresting Wilson. *See* Pls.' City Opp'n 11. Specifically, plaintiffs' visible injuries, the availability of eyewitnesses such as Duncan, and the apparent lack of immediate danger could have required a reasonable officer to investigate further prior to arresting Wilson. *See Wong v. Yoo*, 649 F. Supp. 2d 34, 60 (E.D.N.Y. 2009) (denying summary judgment in part because "plaintiff's visible injuries, the lack of any threat of immediate harm, and the presence of eyewitnesses eager to provide statements in plaintiff's favor . . . called into doubt [defendant's] version of events and required further investigation into whether probable cause to arrest plaintiff for assault was negated by the justification of self-defense").

It may well be that the officers, including Sergeant Jaffe, knew all of this information and made determinations as to the veracity and credibility of the competing accounts. Indeed, Officer Sherpa later testified that "we did believe Oliver Louis's accounts" and "we did deem his statement to be correct" in part based on the visible injuries to Louis's face. Pls.' Excerpted Sherpa Dep. Tr. 23:17–24:9. Yet Sergeant Jaffe ordered both Louis and Spaulding-Bey arrested because they each claimed to have been struck first. Even though that statement was incorrect—Spaulding-Bey told officers he struck Louis first—it indicates that Sergeant Jaffe may have credited both accounts of self-defense, which a jury could find factually inconsistent. Nonetheless, evidence of those determinations is largely absent from the record before the Court. And the Court may not

on its own weigh the credibility of the accounts from Spaulding-Bey or Louis. *See Rupp*, 91 F.4th at 634. That is a job for the jury.

What the officers collectively knew or believed to be true at the time of plaintiffs' arrests is disputed. Viewing these facts in the light most favorable to plaintiffs, a reasonable jury could determine that at the time of the arrests, the officers disregarded evidence "undermin[ing]" the "veracity" or trustworthiness of Spaulding-Bey's accounts. *See Triolo*, 24 F.4th at 106. Or a reasonable jury could find that the officers should have investigated further prior to arresting plaintiffs. *See Wong*, 649 F. Supp. at 60. In either scenario, the record viewed most favorably for plaintiffs reveals the inapplicability of judgment as a matter of law. To be sure, the factual circumstances are complex in this case, where several officers interviewed three visibly injured complainants who each described the altercation in their own words. Indeed, none of the officers witnessed the altercation, which makes it all the more vital that any factual disputes be resolved prior to making a legal determination as to probable cause.

Accordingly, the officers' collective knowledge at the time of plaintiffs' arrests is a material factual dispute reserved for the jury.

## II.   Qualified Immunity

Qualified immunity is a judicially made doctrine that shields individual officers from liability for constitutional harms. *See Green v. Thomas*, No. 3:23-cv-00126, 2024 WL 2269133, at *5–6 (S.D. Miss. May 20, 2024). Its stated purpose is to "balance two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* at *6 (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). In the context of false arrest claims, a finding that an arrest

lacked probable cause does not foreclose individual immunity. *See Triolo*, 24 F.4th at 108 (finding arrest lacked probable cause but officer had arguable probable cause and was therefore immune from liability).

Accordingly, although a material factual dispute exists as to the officers' knowledge at the time of plaintiffs' arrest, the Court must still assess the effect of that factual dispute on the issue of qualified immunity. For the reasons stated below, the Court finds that material disputed facts render a determination as to qualified immunity premature at this time.

### a. *Federal Law*

The City Defendants contend that Officer Sherpa is entitled to qualified immunity with respect to plaintiffs' false arrest claims. Plaintiffs argue that qualified immunity should not apply here because "the right to be free from false arrest is clearly established." Pls.' City Opp'n 16. For the reasons stated below, the Court finds that a determination of qualified immunity is not yet ripe for judicial determination.

The judicial doctrine of qualified immunity "protects government officials from civil damages liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020). It does not protect municipalities. *Triolo*, 24 F.4th at 110. Courts considering a defense of qualified immunity must assess first, whether "the official violated a statutory or constitutional right," and, if so, whether that "right was clearly established at the time of the challenged conduct." *Treubig*, 963 F.3d at 224 (analyzing the "two-step framework articulated by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194" (2001)). Whether a right was "clearly established" depends

on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Treubig*, 963 F.3d at 224.

The right to be free from unreasonable search and seizure is clearly established under federal law. *Amore v. Novarro*, 624 F.3d 522, 531 (2d Cir. 2010) ("It has long been clearly established that an arrest without probable cause is a constitutional violation."). Even so, qualified immunity may protect an individual officer from liability if "it was objectively reasonable for the officer to believe the conduct at issue was lawful." *Steele-Warrick v. Microgenics Corp.*, 671 F. Supp. 3d 229, 246 (E.D.N.Y. 2023) (citing *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013)). In the context of false arrest claims, the question then becomes whether the officer had "arguable" probable cause for the arrest. *Amore*, 624 F.3d at 536. Officers have "arguable" probable cause "if: (1) it was objectively reasonable for the officer to believe that probable cause existed, or (2) officers of reasonable competence could disagree on whether the probable cause test was met." *Folk v. City of New York*, 243 F. Supp. 3d 363, 373 (E.D.N.Y. 2017).

If no material facts are disputed, "the matter of whether the officer's conduct was objectively reasonable is an issue of law to be determined by the court." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007). Where material facts are disputed, however, those questions "must be resolved by the factfinder." *Id.* at 368; *see also Walker v. Carrozzo*, 664 F. Supp. 3d 490, 521 (S.D.N.Y. 2023) ("In the event that there are triable disputes as to the circumstances that could dictate whether the defendants could reasonably believe that his conduct was lawful, summary judgment based on an immunity defense must be denied."). Only after the jury has resolved any factual questions "material to the qualified immunity issue" can the court make the legal determination as to whether qualified immunity bars liability. *Walker*, 664 F. Supp. 3d at 522.

Here, as described above, there is a factual dispute regarding the officers' collective knowledge at the time of plaintiffs' arrests that directly bears on whether probable cause existed for the arrests. That dispute also bears on whether the officers had arguable probable cause. Arguable probable cause depends on the reasonableness of the officers' beliefs at the time of the arrest—exactly the issue that precludes summary judgment as to probable cause. Because that question is for the jury, the Court cannot at this stage determine whether Officer Sherpa's conduct was protected by the doctrine of qualified immunity. Accordingly, the City Motion is denied insofar as it seeks summary judgment with respect to the federal false arrest claims against defendant Sherpa.

> b. *State Law*

Pursuant to New York state law, police officers may be immune from liability for a false arrest claim "if their actions entail making decisions of a judicial nature" but not if "there is bad faith or the action taken is without a reasonable basis." *Triolo*, 24 F.4th at 108. An officer's decision is "of a judicial nature if it requires the application of governing rules to particular facts," or if it is "an exercise of reasoned judgment which could typically produce different acceptable results." *Id*. at 109. That is a question of objective reasonableness, which is "essentially coextensive with the reasonableness inquiry" pursuant to the federal doctrine of qualified immunity. *Graham v. City of New York*, 128 F. Supp. 3d 681, 696 (E.D.N.Y. 2015). The second prong is a question of subjective reasonableness: New York state qualified immunity is "entirely unavailable if there are undisturbed findings of bad faith." *Lore v. City of Syracuse*, 670 F.3d 127, 166 (2d Cir. 2012).

Defendants insist that they are "unaware of any case law" establishing that defendant Sherpa violated clearly established law. *See* City Mot. 22–23. Yet they point to

no record evidence, or raise a lack thereof, to establish the absence of a factual dispute as to whether defendant Sherpa acted with bath faith when arresting plaintiffs. Nor can the Court determine the objective reasonableness of the arrests, for the same reasons it cannot determine whether probable or arguable probable cause existed.

The City Defendants have not met their burden to show that they are entitled to judgment as a matter of law with respect to the applicability of state law qualified immunity as to Officer Sherpa. Accordingly, the City Motion is denied insofar as it seeks summary judgment with respect to the state false arrest claims against defendant Sherpa.

III.    <u>Municipal Liability</u>

Municipal liability is legally distinct from individual liability. Thus, the Court must assess the liability of the City for false arrest, apart from that of Officer Sherpa. Pursuant to federal law, a city may only be held liable for constitutional harms if the record establishes that the harm was caused by a municipal policy or custom. Under state law, a municipality may be held vicariously liable for the tortious conduct of its employee— including a city police officer—so long as that employee acts within the scope of his employment. For the reasons stated below, the City is entitled to judgment as a matter of law as to plaintiffs' federal, but not state, law claims for false arrest.

a.  *Federal Law*

A plaintiff asserting a Section 1983 claim against a municipality must allege three elements: "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Plaintiffs can demonstrate a municipal policy or custom through allegations regarding "decisions of a government's lawmakers, the acts of its policymaking

officials, and practices so persistent and widespread as to practically have the force of law." *20 Dogwood LLC v. Vill. of Roslyn Harbor*, No. 22-cv-04047, 2023 WL 3571239, at *7 (E.D.N.Y. May 19, 2023) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)), *aff'd*, No. 23-cv-00930, 2024 WL 1597642 (2d Cir. Apr. 12, 2024); *see also Deferio v. City of Syracuse*, 770 F. App'x 587, 590 (2d Cir. 2019) (summary order) (noting four avenues for municipal liability, including failure to train employees).

The City Defendants assert that plaintiffs have "simply failed to present any evidence whatsoever to support the allegations underlying their municipal liability claim," and likewise have not "conducted any *Monell* discovery in this matter." City Mot. 28–29. Indeed, in their Opposition, plaintiffs fail to cite any record evidence supporting municipal liability. *See generally* Pls.' City Opp'n. Plaintiffs do argue that Sergeant Jaffe "incorrectly informed" Officer Sherpa "that Spaulding-Bey claimed Louis struck him first." Pls.' Spaulding-Bey Opp'n 8. Viewing the record in the light most favorable to plaintiffs, this could arguably support municipal liability. But plaintiffs have provided no suggestion that Sergeant Jaffe is a policymaking official, that his statement to Officer Sherpa could be considered as training, or that his directive was the product of a failure to train employees. Nor do plaintiffs point to any other incidents similar to their allegations that might establish a municipal practice.

Because plaintiffs have failed to develop any record that would allow a factfinder to rule in their favor on this issue, no genuine factual dispute exists over the City's municipal liability pursuant to federal law. With no support for municipal liability in the record or in the briefing, each plaintiff's federal false arrest claim against the City fails as a matter of law. Accordingly, the City is entitled to summary judgment with respect to the Section 1983 claims for false arrest.

23

### b. State Law

In New York, employers may be held vicariously liable for their employees' unlawful conduct "so long as the wrong was committed within the scope of employment." *Triolo*, 24 F.4th at 110. This is true even where an individual officer is protected from liability through qualified immunity. *Id.* at 110–13. That is, a municipality may still be vicariously liable for false arrest under New York law based on that officer's conduct, even if that officer is not liable. *Id.*

Here, the City Defendants did not address vicarious liability. *See generally* City Mot., Reply. The Court perceives no reason from the parties' briefing or the evidentiary record to suggest that Officer Sherpa did not act within the scope of his employment for the City when arresting plaintiffs. *See Triolo*, 24 F.4th at 112 (finding officer acted within scope of employment when arresting plaintiff). Nonetheless, the material factual disputes regarding probable cause that prevent summary judgment, as discussed *supra*, preclude the Court from making a vicarious liability finding at this time. That is because, if plaintiffs' arrests were made without probable cause, the City could be vicariously liable for plaintiffs' state false arrest claims—regardless of whether Officer Sherpa is immune from liability. If, on the other hand, the officers arrested plaintiffs based on probable cause, no vicarious liability will flow. Because the Court cannot make the probable cause determination on summary judgment, it cannot foreclose the City's liability at this time.

Accordingly, the City Motion is denied insofar as it seeks summary judgment as to the City's liability for plaintiffs' state false arrest claim.

### IV. Defendant Spaulding-Bey

Plaintiffs assert that the state and federal claims for false arrest also apply to defendant Spaulding-Bey and separately maintain claims against him for common law

assault and battery. On its liberal review of defendant-Spaulding-Bey's submissions,[7] while still viewing the record in the light most favorable to plaintiffs, the Court finds an absence of any material factual dispute as to whether defendant Spaulding-Bey is a state actor or whether he caused the police to arrest plaintiffs. Accordingly, and for the reasons stated below, defendant Spaulding-Bey is entitled as a matter of law to summary judgment on the federal and state false arrest claims against him. However, because material factual disputes persist regarding the altercation between plaintiffs and defendant Spaulding-Bey, summary judgment is not appropriate for the assault and battery claims.

### a. False Arrest

Plaintiffs oppose defendant Spaulding-Bey's motion for summary judgment on the grounds that defendant Spaulding-Bey should be held liable for state and federal false arrest because he provided a "false statement" that led the police to arrest plaintiffs. Pls.' Spaulding-Bey Opp'n 14. For the reasons stated below, the Court finds an absence of material factual disputes as to defendant Spaulding-Bey's liability for false arrest. Accordingly, defendant Spaulding-Bey may not be held liable for federal or state false arrest based on the record before the Court.

---

[7] Plaintiffs contend that defendant Spaulding-Bey's motion should be denied because he failed to file a Local Rule 56.1 Statement of Material Facts or respond to plaintiffs' Local Rule 56.1 Statement of Material Facts. Pls.' Suppl. Spaulding-Bey Opp'n 2. However, the Court may exercise "discretion to determine whether to overlook a party's failure to file a Rule 56.1 statement." *Lin*, 2024 WL 1193554, at *3 (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001)). Indeed, the Court may "opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement" in order to "decide the motion on the merits." *Id.* The Court does so here in light of defendant Spaulding-Bey's *pro se* status.

In order to succeed on a constitutional claim against a non-governmental defendant, a plaintiff must show "state action." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003). A private individual or entity may be considered to engage in state action "when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Hernandez v. City of New York*, No. 1:18-cv-06418, 2022 WL 316938, at *4 (S.D.N.Y. Feb. 2, 2022). However, providing the police with information that may lead to an arrest is not alone sufficient to transform a private individual into a state actor. For example, in *Hernandez*, a private security company reported an altercation to the police. The Court found that none of the state actor tests had been satisfied, in part because "the provision of information to police officers, even if that information is false or results in the officers taking affirmative action," does not transform a complaining witness into a state actor under Section 1983. *Hernandez*, 2022 WL 316938, at *5.

New York state law provides a different standard. In the "atypical situation of a civilian, as opposed to an arresting officer, being sued for false arrest," it is not enough for plaintiffs to hold a private individual liable "merely for furnishing information to the police." *TADCO Const. Corp.*, 700 F. Supp. 2d at 268. So long as the police "exercise independent judgment to arrest a plaintiff," liability will not attach. *Id.* But if plaintiffs can demonstrate that "defendant instigated his arrest" by taking "an active role in the arrest of the plaintiff, such as giving advice and encouragement or importuning the

authorities to act with the intent to confine the plaintiff," a court may find an individual accountable for false arrest. *Id.* at 268–69. Providing false information, "advice," or "encouragement" to the police despite lacking "reasonable cause for their belief in the plaintiff's culpability" is sufficient for private individuals to be liable for New York state false arrest claims. *Sanders v. City of Saratoga Springs*, 691 F. Supp. 3d 548, 560 (N.D.N.Y. 2023).

The facts of defendant Spaulding-Bey's report to the police are undisputed. Defendant Spaulding-Bey contends that after the altercation ended, he "exited the building, and immediately walked a few houses over to the police department . . . as [he] did not want to become the subject of an outstanding warrant." Spaulding-Bey Mot. 9. He then provided a statement to the officers, as described *supra*. Plaintiffs contend that defendant Spaulding-Bey made an alleged false statement to the police by reporting that he was acting in self-defense and therefore caused the police to falsely arrest plaintiffs. Pls.' Spaulding-Bey Opp'n 14. Yet plaintiffs also contend that defendant Spaulding-Bey "inform[ed] the police he was the aggressor and started the fight," Pls.' Spaulding-Bey Opp'n 14; "[a]t no point did Spaulding-Bey state or claim that Louis struck him first or was the aggressor," City Opp'n 15; and that "Spaulding-Bey admit[ed] [Wilson] tried to break up the fight and he punched her while he was on top of Louis," City Opp'n 15–16.

Plaintiffs, at best, appear to argue that defendant Spaulding-Bey's statement to the police was inconsistent rather than inaccurate. The record does not indicate that defendant Spaulding-Bey did anything more than provide "information to police officers," which may have "result[ed] in the officers taking affirmative action." *See Hernandez*, 2022 WL 316938, at *5. Nor does the record suggest that Spaulding-Bey affirmatively "encourage[d]" the police to arrest plaintiffs. *See Sanders*, 691 F. Supp. 3d at 560. On its

27

review of the record in the light most favorable to plaintiff, the Court finds that a reasonable jury could not find defendant Spaulding-Bey's statements constituted state action or instigated plaintiffs' arrest.

Accordingly, defendant Spaulding-Bey is entitled to summary judgment on plaintiffs' claims for false arrest under state and federal law.

### b.  *Assault and Battery*

Plaintiffs' assault and battery claims against defendant Spaulding-Bey are the subject of a material factual dispute—whether Spaulding-Bey acted in self-defense. *See* Pls.' Spaulding-Bey Opp'n 13; Spaulding-Bey Mot. 6–8 (asserting that defendant Spaulding-Bey "proceeded to take a defensive posture" during the altercation), 12–13 (contending that defendant Spaulding-Bey was "defending [himself] from them as [plaintiffs] left their safe, secure, and locked apartment via[] a steel door to engage [him] in a fight"). As explained above, plaintiffs' accounts of the altercation conflict with defendant Spaulding-Bey's account: each person recalled acting in self-defense. Accordingly, plaintiffs' assault and battery claims against defendant Spaulding-Bey are not ripe for summary judgment and his motion must be denied in this respect.

Although the Court may decline to exercise its supplemental jurisdiction over state law claims under certain circumstances pursuant to 28 U.S.C. § 1367(c), the Court declines to do so here. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (describing "the discretionary nature of supplemental jurisdiction"). Plaintiffs' assault and battery claims neither "raise[] a novel or complex issue of State law" nor "substantially predominate[] over" the false arrest claims. 28 U.S.C. § 1367(c)(1)–(2). Nor has the Court dismissed all of plaintiffs' federal claims—indeed, they are directly related to these claims as they all concern the same underlying altercation. *See id.* § 1367(c)(3).

28

Furthermore, this action does not present "exceptional circumstances" counseling the Court to decline supplemental jurisdiction. *See id.* § 1367(c)(4). This is especially so in light of Congress' "note of caution that the bases for declining jurisdiction should be extended beyond" those enumerated reasons "only if the circumstances are quite unusual." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998) (finding "judicial economy, convenience, fairness" insufficient under subsection (4)). For these reasons, the assault and battery claims against defendant Spaulding-Bey, though based solely on state law, shall proceed.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** defendants' motions for summary judgment with respect to (i) the Section 1983 false arrest claim against the City and (ii) the state and federal false arrest claims against defendant Spaulding-Bey. The Court **DENIES** the motions for summary judgment with respect to (a) plaintiffs' state and federal false arrest claims against defendant Sherpa; (b) plaintiffs' state false arrest claim against the City; and (c) plaintiffs' assault and battery claims against defendant Spaulding-Bey. In accordance with the Court's Individual Practice Rule IV.A, the parties shall file a proposed joint pretrial order by February 13, 2025.

**SO ORDERED.**

  */s/ Natasha C. Merle*  
NATASHA C. MERLE  
United States District Judge

Dated:       January 13, 2025  
             Brooklyn, New York

29